1702 from the Northern District of Iowa, United States versus Jose Ramirez-Martinez. All right Mr. Roth you may begin. Thank you your honor and thank you judges of the Eighth Circuit for allowing me to argue the case of Mr. Ramirez-Martinez today. The case before us essentially involved two pieces of evidence at trial. Those pieces of evidence were one some phone evidence admitted through wiretaps that we are arguing should not have been admitted. The other piece of evidence was essentially boils down to cooperator testimony that we're arguing was facially not credible. For these reasons and as I'll further explain we're asking for a reversal of Mr. Ramirez-Martinez's convictions. As to the first piece of evidence I mentioned the phone evidence in our brief and trial we were objecting to essentially the text message evidence and these text messages further can divide down into two types of text messages. One category was messages purporting to be from my client the appellant Mr. Ramirez-Martinez and these were admitted as statements by a party opponent. The second type of or subtype of text messages were alleged co-conspirator statements. Now dealing with the text messages from Mr. Ramirez-Martinez or alleged to be from Mr. Ramirez-Martinez refer to these in my brief and here is the 6140 messages. The reason for that is that's the last four digits of the phone alleging to be Mr. Ramirez-Martinez's. Now when looking at any statement that's alleged to be from a party opponent the first thing that the proponent of the evidence essentially has to show is that that person making the statement was the party opponent. Lots of times you have somebody you may make a statement on a recording or video or directly to a witness and it's pretty easy to that's the party opponent. But here we're dealing with messages where we don't know who the author is or who is on the other end of the phone and our argument is that there is insufficient evidence to rise the level of proof needed to show that that was messages from the party opponent in this case. Counsel I have a question to Judge Kobus here and I don't recall from your brief is the argument that your client was not sufficiently connected to the phone or that the particular messages that were admitted are not connected to your client? I think it's kind of both and the real argument here is first that he wasn't sufficiently connected to the phone. Well I mean that seems to me there's a fair amount of evidence connecting your client. There's that phone call the law enforcement made there's the co-conspirators conspirator statements saying that they called your client on that telephone number. Why isn't that sufficient to invoke the to support the district court's decision here? Hello. Hello your honors. Yes. Counsel are you still there? I'm not sure if you heard my question or not. I did get the question I'm sorry my audio and video cut out on my computer for about 30 seconds. I did get the question about whether the phone number was connected to my client or whether he's the author of the messages. I mean our argument essentially boils down to both those things is that he wasn't sufficiently connected to the phone first and second you can't really show that he's the author of those messages. So I think that I think counsel you missed my second question then and that was it seems to me there's a fair amount of evidence linking your client to that phone number. You had the the ruse phone call that was observed by law enforcement. You had co-conspirators statements saying hey this is how we got a hold of your client at this phone number. Why isn't that sufficient enough to link your client to that phone number? Yes your honor and I guess as for as far as the ruse phone call goes again as we addressed in the brief there is one out of two phone calls made he answered during the one ruse phone call and it's our assertion that that's the only piece of evidence linking him to that phone number. How about the co-conspirators statements that they called him on that phone number? Yes your honor and the co-conspirators statements were that they called a person named Primo on that phone number. They actually didn't know whether it was Mr. Ramirez Martinez that they were talking to or somebody else. The two people that actually knew Mr. Ramirez Martinez in person Miss Salazar and the other guy Rafael I can't remember his last name at the moment. Those two didn't identify that phone number as belonging to Mr. Ramirez Martinez. It was only the two Minnesota conspirators or cooperators that identified that number as belonging to Primo but again they didn't know who they were talking to on the other end of the line and so that's why it's our assertion that the really the only piece of evidence linking Mr. Ramirez Martinez to the phone number is the ruse caller your honor. And so again we cited in our brief the tenth circuit the Brinson case essentially to show that you know there's a level of proof here that needs to be reached to show that somebody can be account or phone number. In that case it was a Facebook account. In this case it's a phone number but again there's no evidence in this case showing who is the owner of the phone. No address of the account number or the account holder. It was just that one ruse call. What do you believe the standard of proof is? I mean because I view this as a preconditional fact question that's ordinarily determined by the trial judge and so that preconditional fact question is usually just cited with burden of proof being sufficient that a jury could find by the greater weight to the evidence that it has been connected right and so it's just sufficient to raise a jury question to a preponderance. Now is that not true or is it some other burden? I would agree that's the burden your honor. It's just our assertion that the evidence in this case didn't meet that burden. That the evidence as I said you know as shown in another case needs to be more than the ruse call. Out of two different ruse calls one of which wasn't answered that could link Mr. Ramirez Martinez to the phone number. So I would agree that's the burden. It's just it was not shown in this case. We're not arguing for any kind of higher burden. And so again as your honor said earlier and the government argues there's other evidence that may link Mr. Ramirez Martinez's Garcia Jimenez. The one Minnesota cooperator didn't actually ID the end user of the 6140 number just knew him as El Primo. The Pisegno cooperator the testimony the government cites in its brief didn't necessarily discuss that Pisegno knew the end user of the 6140 number just said Pisegno had driven down to Denison to meet with Mr. Ramirez Martinez. So again it really comes down to the one ruse call. As far as the text messages of the co-conspirators go there is a few different categories or subcategories of those messages. There's the Ishmael Moreno messages. There's the Duena messages. As far as the Moreno messages go again those messages we didn't really address them much in the brief but still there's insufficient evidence to show that those were co-conspirator messages that are applicable to this case. One of the I guess initial burdens the government has to show is that the defendant was part of the conspiracy alleged in those messages or co-conspirator statements. As far as the Moreno messages go we assert that the defendant wasn't alleged to be part of those. The Duena messages I think there's even less evidence that the Duena messages were part of the conspiracy. Really when it comes down to the Duena messages the only evidence really showing those were in furtherance of the conspiracy were the agent's statements or the agent's I guess subjective opinions about these have to do with drug trafficking. Counsel, you're running out of time and it seems to me that even if you prevailed on this argument there's still plenty of evidence to convict in this case by the testimony of co-conspirators and cooperating witnesses. Yes your honor and again I think you're referring to the government's argument that the mission of the messages could be harmless error. As we said in our reply brief we assert that they are not harmless that wasn't harmless to admit these text messages. The government's case really came down to these two main pieces of evidence the cooperator testimony and the text messages and the admission the text messages was not harmless because without them I mean you have the uncorroborated cooperator testimony. You had the two guys the Minnesota guys whose testimony I mean almost is essentially worthless without any corroboration from the text messages. The guys who only met Mr. Ramirez Martinez allegedly many years prior on one occasion for each guy. So I guess it's our assertion as far as those cooperators go their testimony would be even more incredible without the text messages. So without the text messages the cooperative testimony wouldn't be enough. The other two cooperators that Trishina Salazar and the other gentleman from Denison again as we argue in the brief we believe their testimony is likewise not credible. And so again when it's just those cooperative testimonies it's insufficient evidence to find Mr. Ramirez Martinez guilty of the crime. And so at the end of my argument so if your honors don't have any more questions I'll reserve the rest of my time for rebuttal. All right thank you very much. And Mr. Wadey you may proceed. May it please the court. Sean Wade representing the Northern District of Iowa and AYSA in this particular case. This case was a three-day trial that involved as we've already outlined a little bit historical cooperator testimony from four cooperators co-conspirators and then seven law enforcement agents primary case agent regarding the T3 wiretap type or based investigation although there were other investigative techniques used and then a number of officers on surveillance activity to help identify participants in the conspiracy and tie up certain I guess T3 wires wiretap intercepts to certain activities of those involved in an case is kind of a three-legged stool so to speak in the sense that you have the physical evidence of what was seized ultimately methamphetamine corroborating that there was a methamphetamine operation based in Worthington Minnesota the head of it Garcia Jimenez aka Magana was kind of the northern head of the of the operation and then it involved the kind of a source for Magana that he identified as the defendant and somebody he didn't want his primo somebody had previously met one time back in 2014 but then got involved with through a co-conspirator named Lopez Zuniga when he needed an alternative source and then essentially distribution between Dennis and Iowa northern northward towards Worthington Minnesota and then distribution from Worthington Minnesota south and around the Worthington in the area so you had southwest Minnesota I guess southeast South Dakota and northwest Iowa all being served by the Magana based organization as alternatively sourced at least in part for part of the methamphetamine by the defendant the sufficiency of the evidence is because of that we argue is sufficient because of that three-legged stool type of evidence that we have it both from co-conspirators who corroborate each other who are also corroborated in part by some of the t3 intercepts who don't all know each other for example Rafael Martinez in the Denison area knew the defendant was introduced to the defendant distributed methamphetamine the defendant he overlapped a bit with Trishina Salazar and so he knew she got methamphetamine from the defendant she knew he got methamphetamine from the defendant he knew him as primo she knew him as Carlos there's testimony that drug traffickers use multiple nicknames then you have the northern part you have Magana the head of the organization needed source for methamphetamine utilized the defendant was introduced to him by text message or phone got the phone number used the phone number those trans those intercepts that were utilized were consistent as testified to by the officer and by Magana consistent with drug trafficking and then he utilized Saul Pisano Valtierra as a go-between at least one time to about Saul Pisano Valtierra identified the defendant in the courtroom Magana identified the defendant by exhibit one or a photograph that he had dealt with one time in 2014 and obviously Trishina Salazar identified him in the courtroom as did Rafael Martinez Ms. Salazar had taken methamphetamine as a transporter north towards Magana two times one time was corroborated by Magana we also have the intercepted surveillance based operation that caught an individual by the name of Marino transporting north as well consistent with Magana's testimony and then we have Saul Valtierra saying that he went down and utilized a hand-to-hand transaction with the particular defendant in regards to that uh acquisition of approximately anywhere from a quarter pound to a half pound of methamphetamine now the individuals down south talked more about ounces and quarter pounds individuals north talked about more about core pounds to half pounds but they talked about repeated conduct with the defendant um and uh in in a methodology of having a transporter between the two locations at first Lopez Zuniga the actual initial introducer of that operation between Mr. Ramirez Martinez to Garcia Jimenez and then later people like as Trishina Salazar like Ismael Marino that was observed on surveillance and then discussed a number of other types of transactions by other transporters that were discussed by Magana and Saul Valtierra. The evidence was again multifaceted uh it's one of those types of things where you have to hear all the historical testimony in order to compare and contrast it you almost have to hear the series of of text messages and I guess recorded phone calls there's a couple of those to kind of in this particular case. So the district court did not err in overruling the defendant's motion for judgment of acquittal. I'm going to turn to the text messages kind of the crux of the defendant's arguments in this particular case. The argument appears to be that there's only one evidence only one way to identify him originally and that was the Ruiz phone call we submit that as an error uh incorrect as I think came up in some of the questioning of defense council uh that that there was more than that uh particularly with regard to historical testimony by the cooperators particularly by Garcia Jimenez aka Magana. The court admitted the evidence in three phases 801 D2A as a party of omissions by a party opponent finding by a preponderance of the evidence that um that government had identified the defendant as the operator of that particular phone. I think the court cited the Ruiz phone call but also cited other testimony by the cooperators and other testimony in the case. I would submit that that was not only the other cooperators particularly Magana testifying about his communications this is what these messages meant transfer of money transfer of methamphetamine arrangements for transportation when they had difficulties doing that number of inquiries of when I'm when when are you going to have money for me coming from the defendant and and Magana's putting him off and then ultimately making some payments. The additional evidence uh that that is more I guess indirect in nature is that the messages showed the officers that there was going to be a transport of believe transport of methamphetamine and they did surveillance and did observe Ismael Moreno go up to Ms. Worthington. They observed him at Worthington as he it was determined he was lost. Agents found him Magana found him through his uh through his second uh Basano Valtierra. Agents observed that individual go to Magana's house and then observed him track all the way back down to through a series of officers to Denison. Magana then testifies so Basano Valtierra testifies and the the text messages match up and the phone call matches up. I think it's exhibits 117 and 118 as to that guy getting lost and then them leading him to Magana to deliver a half pound of methamphetamine consistent with Magana's discussions and Salvatano Valtierra's discussions as to how these transactions occurred, how they were transported north and how Mr. Valtierra and then sign up for calls to put down and obtain methamphetamine down south. So there was a variety of different ways in which the defendant was identified as the operator that phone the roots call and also the fact that he there was behavior consistent with the delivery of methamphetamine in context of some of those calls as testified to by Magana and to a certain degree by the case agent. Now I'm going to turn to the two that that was principally 100 level exhibits 101 to 138, 117 and 118. I believe there was an error in the in the in the court's transcripted test order it was using 118 to 119 but now in any event there were two calls with Marino and Magana that Magana identified and were co-conspirator hearsay as determined by the court. The rest of those were by the defendant and were considered party admissions or party opponent statements and or either reference as to the context or 801 D2E co-conspirator statements. But the 200 level exhibits 201 to about 222 involve another co-conspirator identified both by Rafael Martinez in a way he said Magana he said the defendant's source was female. Trishina Salazar identified defendant's source or at least source that she knew in the past was a photograph of she knew it as Duena the ID identified by the officers in the traffic stop and the ruse called that she answered the phone that was on the wiretap intercepts was Maria Alvarez. Court found that sufficient to establish her as a co-conspirator the two co-conspirators actually said that she was a co-conspirator and source for the defendant and then the agent testified as to the context actually two agents but primarily the case agent testified as to the context of those particular intercepts and why they were intercepted including following or meeting at a location that they believed was a money drop and then later following her throughout northwest Iowa to identify her. And then there's a second set of phone calls or text messages thereafter where it's a different phone number which the agent testified that he had determined that she was the owner of or operator of by open source inquiries and again consistent code words numbers about getting money and when she could get money to the 614 zero number operated by the defendant. In the overall context of things you look at each individual type of evidence whether it be the 100 exhibits without other testimony from the co-conspirators it doesn't make as much sense the 200 exhibits may be the same thing but in combination the 100 exhibits the 200 exhibits and then the testimony of the officers regarding not only the expertise of drug trafficking but of the surveillance activity that corroborated the actual intercepts. It's what you want officers to do when they get intercepts is to follow up and do some surveillance as to what activity is being talked about at least in code and we were able to verify that in a couple occasions in this particular case and that corroborated the statements. Finally as I think came up earlier in questions to the defense even assuming and we're not conceding that here we think it was all properly admitted in the three ways in which the court did on the transcript I believe at 455 through about 465 if there were some exhibits that were erroneously admitted we believe that there would be harmless error in the context of all the historical testimony about direct contact with the defendant by a number of people and indirect contact by others in his drug trafficking activities in northwest Iowa to southwest Minnesota. That concludes my comments to the court unless the court has some questions. Okay I guess not. Thank you very much Mr. White and Mr. Roth you may proceed with your rebuttal. Thank you your honors. Just a couple points I'll be brief. One discussing the government's evidence one more time about the sufficiency. The government talks about the three-legged stool. I understand that there was physical evidence found in the case. Again there's really no ties of any physical evidence to Mr. Ramirez Martinez. The evidence against him was the cooperative testimony and the text messages. A second point I think the government kind of hit upon it in their argument is going to the point of whether these messages were admitted and whether their the messages provide context and corroboration. Again our argument is that provides that context and corroboration to the point of really you can't have the cooperative testimony without that other component and so again we believe there's insufficient evidence to have convicted Mr. Ramirez Martinez but we are requesting either judgment acquittal or remand for new trial. Thank you counsel. I appreciate your arguments this morning. The case is submitted and the court will render a decision in due course. You may call the next case.